# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

```
KEITH WILLIAMS and                     )
STANDARD BANK AND TRUST COMPANY        )
AS TRUSTEE u.t.a. dated 10-06-1993     )
a.k.a. Trust No. 14086,                )
                                       )
            Plaintiffs,                )
                                       )
      v.                               )    No. 11 C 9106
                                       )
QUANTUM SERVICING CORPORATION and      )
MORTGAGE ELECTRONIC REGISTRATION       )
SYSTEMS, INC.,                         )
                                       )
            Defendants.                )
```

## MEMORANDUM OPINION

Before the court are the motions of defendants Quantum Servicing Corporation and Mortgage Electronic Registration Systems, Inc. to dismiss the First Amended Complaint or stay the action and the plaintiffs' motion for leave to file a Second Amended Complaint. For the reasons explained below, the defendants' motions are granted in large part and the plaintiffs' motion is denied.

## BACKGROUND

Plaintiff Standard Bank and Trust Company (the "Bank as Trustee") is the trustee of a land trust formed by plaintiff Keith Williams to hold title to his house. On June 11, 2007, the house was mortgaged with American Home Mortgage Corporation ("American

Home").[1]  As part of this transaction, Williams and the Bank as Trustee signed a note (the "Note") in favor of American Home, and the Bank as Trustee signed a mortgage (the "Mortgage") conveying a security interest in the house.  The Mortgage identifies American Home as Lender and states that defendant Mortgage Electronic Registration Systems, Inc. ("MERS") "is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument**."  (The Note is attached as Exhibit A, and the Mortgage is attached as Exhibit B, to plaintiffs' First Amended Complaint.)

Shortly thereafter, American Home sold the Note and the Mortgage to Société Générale, a French bank.  The servicer of the loan, however, which apparently was American Home Mortgage Servicing, Inc., remained the same at that point.  From September 1, 2007 onward, defendant Quantum Servicing Corporation ("Quantum") has represented itself (falsely, it is alleged) to plaintiffs as the servicer of the Note and Mortgage.  Quantum sent Williams statements each month, and Williams made mortgage payments to Quantum.  (First Am. Compl. ¶ 21.)

On January 20, 2010, Quantum recorded what plaintiffs deem a "purported" "Loan Modification Agreement (the "Agreement") between the Bank as Trustee and Quantum; the Agreement identifies Quantum as Lender.  Plaintiffs allege that Quantum "induced Plaintiffs into

---

[1]/  American Home was originally named as a defendant in this case, but plaintiffs have dismissed their claims against it.

signing" the Agreement by making the false representation to them that it is the servicer. (First Am. Compl. ¶ 21.) It is alleged that no Assignment or other transfer of the Note or Mortgage to Quantum had been recorded as of the date when the Agreement was recorded. (First Am. Compl. ¶ 17.) It is plaintiffs' position that the Agreement is void and conveyed nothing to Quantum and that Quantum is neither the owner nor legal holder of the Note or Mortgage. (First Am. Compl. ¶ 33.)

Subsequently, on October 8, 2010, in preparation for a foreclosure action against plaintiffs, Quantum recorded what plaintiffs deem a "purported" Assignment of Mortgage wherein MERS assigned the Mortgage to Quantum. According to plaintiffs, the Assignment of Mortgage "was signed by two employees of Quantum who falsely claimed to sign on behalf of MERS when in fact they had no authority to do so." (First Am. Compl. ¶ 34.) On February 9, 2011, Quantum filed a "Complaint to Foreclose Mortgage" against plaintiffs in the Circuit Court of Cook County. Williams and the Bank as Trustee moved to dismiss the action on the ground that Quantum has no standing to foreclose because it is not the "holder" of the mortgage. The motion was denied, and a motion to reconsider that ruling was also denied.

Then, on December 22, 2011, plaintiffs brought the instant action in this court. The First Amended Complaint contains five counts. Count I alleges that Quantum violated the Fair Debt

Collection Practices Act by making false representations that the mortgage payments were owed to Quantum. Count II is a quiet-title claim against Quantum and MERS. Count III alleges that Quantum violated the Illinois Uniform Deceptive Trade Practices Act by "falsely holding itself out as the servicer of the Note and the Mortgage and wrongfully collecting mortgage payments." (First Am. Compl. ¶ 45.) Counts IV and V are claims against Quantum for, respectively, slander of title and unjust enrichment. Plaintiffs seek actual, statutory, and punitive damages, restitution in the amount of $100,000.00, reasonable attorney's fees and costs, and an order enjoining Quantum from representing itself as the servicer or as mortgagee and from attempting to collect the subject debt. They also seek a declaration that Quantum and MERS do not have any interest in the subject property and that they are entitled to none of the rights and remedies accorded to mortgagees.

The defendants move to dismiss or stay the action pursuant to the <u>Younger</u> and <u>Colorado River</u> abstention doctrines and alternatively to dismiss pursuant to Federal Rule 12(b)(6) for failure to state a claim.[2] Plaintiffs have responded and have filed a motion for leave to file a Second Amended Complaint that would add a Count VI, a federal antitrust claim pursuant to the Sherman Act against Quantum and MERS.[3]

---

[2]/ Quantum briefed its motion; MERS filed a separate motion that adopts the arguments in Quantum's briefs.

[3]/ We took plaintiffs' motion under advisement without requiring briefs.

## **DISCUSSION**

Defendants' primary argument is that in light of the pending state-court foreclosure proceeding, we should dismiss or stay this action pursuant to the abstention doctrines set forth in Younger v. Harris, 401 U.S. 37 (1971), and Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

Younger does not fit this case. Plaintiffs point out that the Court of Appeals has stated that Younger abstention "is appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." Forty One News, Inc. v. County of Lake, 491 F.3d 662, 665 (7th Cir. 2007). In the state-court proceeding against plaintiffs, the state is not seeking to enforce any of its laws. Defendants do not argue otherwise, and they fail to address Forty One News. Instead, they ask to us to follow a Kentucky district-court opinion that applied the Younger doctrine in a similar case. We decline to do so; we are bound by Seventh Circuit law.

Colorado River, however, does apply. The Colorado River abstention doctrine "permits a district court to dismiss or stay an action when there is an ongoing parallel action in state court." LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1558 (7th Cir. 1989). The principles underlying the doctrine "'rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of

litigation.'" Id. (quoting Colorado River, 424 U.S. at 817) (some internal quotation marks and brackets omitted). The mere fact of pending state-court litigation is insufficient; our "virtually unflagging obligation" to exercise jurisdiction means that abstention must be limited to "exceptional" circumstances. Colorado River, 424 U.S. at 817-18; LaDuke, 879 F.2d at 1558.

The first step in the analysis is to determine whether the concurrent state and federal actions are actually parallel. LaDuke, 879 F.2d at 1559. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." Id. (internal quotation marks omitted). This suit and the state-court suit are parallel. Although MERS is not a party to the state-court suit, the parties are substantially identical. MERS's interests are aligned with Quantum's,[4] and "formal symmetry" is not required for suits to be sufficiently parallel. See Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004). The salient question is whether "there is a substantial likelihood that the state court litigation will dispose of all claims presented in the federal case." TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005) (brackets omitted). The central issue in both cases, and the issue on which plaintiffs' state and federal claims are premised, is whether Quantum has the right to foreclose on the subject property based on

---

[4] The only claim in this suit to which MERS is named as a defendant is the quiet-title claim.

the mortgage securing the debt owed by Williams. It is very likely that the state-court proceeding will dispose of all the claims presented in the instant case.

Where, as here, there are parallel federal and state proceedings, we consider the following non-exclusive factors to determine whether we should abstain:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

LaDuke, 879 F.2d at 1559. These factors are "'to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983)). "[T]he weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand," and we should also consider any "special factors counselling for or against the exercise of jurisdiction" in the case before us. LaDuke, 879 F.2d at 1559 (internal quotation marks omitted).

The majority of the factors enumerated by the Seventh Circuit,

taken together, weigh strongly in favor of abstention.[5] Factors one and four weigh in favor of abstention: the state court assumed jurisdiction over the property at issue in both cases, and it did so several months before plaintiffs filed the instant case. Factor seven slightly favors abstention: the state-court case has progressed a bit further than the instant case, beyond a motion to dismiss and a motion to reconsider the denial of that motion, but nothing significant has happened since then. Factor 5, which favors abstention when state law governs the outcome of a suit, Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 702 (7th Cir. 1992), favors abstention here because the issue of Quantum's interest in the subject property is one of Illinois mortgage-foreclosure law, see 735 ILCS 5/15-1501 et seq. Plaintiffs' FDCPA claim is a question of federal law, but that claim ultimately hinges on the same state-law issue, whether Quantum has the right to foreclose. The FDCPA grants state and federal courts concurrent jurisdiction to enforce its provisions, 15 U.S.C. § 1692k(d), so factor eight favors abstention. Factor six also favors abstention because we have no reason to question the adequacy of the state-court action to protect plaintiffs' rights. Plaintiffs present a single-sentence argument that the Cook County foreclosure courts are "burdened with a staggering

---

[5] Factor two is neutral; the state and federal courts are both in the Chicago metropolitan area, and the parties would not have to commute a long distance to either court.

volume of cases" and "lack both the time and resources to address" their FDCPA claim, Pls.' Resp. at 14, but the Seventh Circuit has rejected such conclusory contentions. See, e.g., Tyrer v. City of S. Beloit, 456 F.3d 744, 757 (7th Cir. 2006) ("The insinuation that Illinois courts will not live up to the standard of full and fair adjudication of the issues is pure speculation that we expressly disavow." (internal quotation marks omitted)). And, as we discussed above, the crux of the FDCPA claim is really a question of Illinois law.

Factor three, the desirability of avoiding piecemeal litigation, weighs strongly in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." LaDuke, 879 F.2d at 1560 (internal quotation marks omitted). As discussed above, this court and the state court are considering the same issue--Quantum's right to foreclose on the subject property--which results in a duplication of time and effort and the potential for gamesmanship and conflicting rulings. Plaintiffs point to Count VI, the federal antitrust claim they seek leave to add to the complaint, and argue that it is a "question of exclusive federal jurisdiction" and that "[t]o move the other counts . . . to State court" would result in piecemeal litigation. (Pls.' Resp. at 14.) This argument misses the mark because abstention would not mean that we would "move" anything to state

court; we would simply stay this case until the state-court proceeding has been resolved.[6] Furthermore, Count VI does not yet exist, and for reasons that dovetail with factor 10, which also favors abstention, we will deny plaintiffs' motion for leave to amend the complaint to add that claim. Under Factor 10, we look at whether the federal claim is vexatious or contrived. The timeline of these cases leads us to believe that this suit is a contrived reaction to the state-court foreclosure proceeding as well as to plaintiffs' setbacks therein. The FDCPA claim is premised on the same basic allegation as plaintiffs' state-law claims. The instant motion for leave to file a second amended complaint to add an antitrust claim seems to be another layer of contrivance--an attempt to prevent the application of an abstention doctrine instead of a serious assertion of a violation of the Sherman Act.[7] Moreover, factor nine, the availability of removal, weighs in favor of abstention because plaintiffs assert diversity jurisdiction and therefore could have removed the state-court case to federal court instead of creating this second action.

---

[6]  Plaintiffs' assertion that it would be error to dismiss the complaint because they seek leave to add this Sherman Act claim also misses the mark. We will not *dismiss* the complaint pursuant to Colorado River. See, e.g., CIGNA Healthcare of St. Louis, Inc. v. Kaiser, 294 F.3d 849, 851 (7th Cir. 2002) (district courts should stay, not dismiss, a case when abstaining under Colorado River). We will merely *stay* this action pending the outcome of the state-court foreclosure proceeding, and in the unlikely event that plaintiffs still wish to seek leave to assert an antitrust claim after that proceeding is concluded, they may do so at that point.

[7]  It does not appear that the proposed Second Amended Complaint successfully states an antitrust claim, but because we have decided to stay this proceeding, we need not discuss the deficiencies of the proposed claim at this juncture.

Because nine of the ten enumerated factors favor abstention, there are exceptional circumstances warranting a stay of this case pursuant to the <u>Colorado River</u> doctrine.  We need not address defendants' Rule 12(b)(6) arguments because dismissal on that basis is sought only in the alternative to abstention.

## **CONCLUSION**

The defendants' motions to dismiss or stay the action [36, 39] are granted to the extent that this action is stayed pursuant to the <u>Colorado River</u> abstention doctrine pending the outcome of the state-court foreclosure proceeding.  The plaintiffs' motion for leave to file a Second Amended Complaint [48] is denied without prejudice.

The parties are directed to notify the court when the foreclosure proceeding in Cook County has been resolved.

DATE:     January 23, 2013

ENTER:    _____

John F. Grady, United States District Judge